FILED
2006 Jan-30 PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

BERNIE BAKER, )
)
Plaintiff, )
)
v. ) Civil Action No.: 4:04-cv-2961
)
DAVID PAULISON, Under Secretary of )
Homeland Security for Emergency )
Preparedness and Response, )
)
Defendant. )

## MEMORANDUM OPINION

This cause comes to be heard upon the plaintiff Bernie Baker's Objection to the Report and Recommendation of the magistrate judge and his Brief on Issues.

## FACTS[1] AND PROCEDURAL HISTORY

In May of 2002, Jayson S. Vice and Leslie Vice ("the Vices"), who are not parties to the present action, contracted for the purchase of a newly constructed residence in Etowah County, Alabama. A subsequent survey revealed that the residence was located within a flood plain; resultantly, Countrywide, the Vices' lender, required that they obtain flood insurance in addition to their homeowners' policy. On June 12, 2001, the Vices went to plaintiff Bernie Baker, a local ALFA Insurance Company agent and an agent for the National Flood Insurance Program ("NFIP") to obtain both homeowners' and flood insurance.

Baker allegedly contacted the NFIP with the information contained in the Vices' Elevation Certificate, and the person with whom Baker allegedly spoke at the NFIP quoted a

[1]The facts in this section are stated favorably to the plaintiff.

$550.00 annual premium for flood insurance. The Vices paid Baker $550.00; Baker completed the necessary paperwork, and forwarded payment and paperwork to the NFIP on that same date. On June 19, 2001, the Vices closed on the purchase of their house.

On September 27, 2001, the Vices received further communication from the NFIP indicating that their $550 payment had purchased only $4,600.00 worth of flood coverage. The Vices were subsequently notified by Countrywide that their flood insurance was insufficient. The Vices promptly notified Baker of the issue. Baker contacted NFIP and was informed that, due to the elevations indicated on the Vices' flood insurance application and the location of the property, the annual premium due on that property was $6,994.00. The NFIP told Baker that the previous premium was a "misquote."

On June 17, 2002, the Vices filed a Complaint against Baker in the Etowah County Circuit Court alleging fraud, misrepresentation, and breach of contract. On December 30, 2002, Baker obtained leave and filed a Third-Party Complaint against the NFIP under 42 U.S.C. § 4081 (c), which requires the Federal Emergency Management Agency ("FEMA") to indemnify and hold harmless an agent or broker for any action arising out of an error or omission on the part of FEMA. FEMA removed this action to the Northern District of Alabama, where it moved to have the case against it dismissed on jurisdictional grounds. In consideration of that motion and Baker's response, Judge Acker dismissed the claims against FEMA on ripeness grounds, and remanded the case, minus FEMA, to the Etowah County Circuit Court.

On August 26, 2004, after a trial on the merits of the Vices' claims against Baker, a judgment was rendered in favor of the Vices in the amount of $45,000.00 plus costs. On October 8, 2004, Baker filed a complaint with this court in which he seeks indemnification for the Vices'

judgment plus the attorney fees and court costs. At issue is the statutory construction of 42 U.S.C. § 4081 (c), which FEMA continues to assert does not contain an express, unequivocal waiver of sovereign immunity.

On October 6, 2005, Magistrate Judge Michael Putnam filed a Report and Recommendation in this case. Judge Putnam recommended that FEMA's Motion to Dismiss be granted and this action dismissed with prejudice, finding that the government had not waived its sovereign immunity from suit: "Construed strictly in favor of the sovereign, § 4081 (c) might have been intended by Congress to authorize and direct certain executive action by the FEMA Director, without, however, consenting to allow the government to be sued...[i]t is one thing to direct FEMA to do something; it is something else entirely to authorize suit against FEMA."

**RULE 12(b)(6) STANDARD**

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS[2]

### I. Baker's Brief on the Issues.

#### 1. Law of the Case/Collateral Estoppel

Baker maintains that the arguments presently raised by FEMA were addressed and "dealt with" in Judge Acker's prior treatment of this case and are barred by principles of federal issue preclusion and the doctrine of the law of the case. Baker quotes:

> "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). "*Collateral estoppel...has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation*."

*CSX Transport, Inc. v. Brotherhood of Maint. of Way Employees.*, 327 F.3d 1309, 1316 (11th Cir. 2003).

Baker claims that the parties to the present action are identical to those involved in the third-party action previously litigated in the Northern District of Alabama pertaining to the Vices' state court suit against Baker. Baker further asserts that FEMA will not be able to point to a "single differentiating fact" that changes the issue first before Judge Acker, and now before this court.

According to Baker, the Eleventh Circuit has previously noted that precedent mandates that:

[i]t give preclusive effect to the judgment of a state court provided that two conditions

[2]This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

> are met: first that the courts of the state from which the judgment emerged would do so themselves; and second, that the litigants had a 'full and fair opportunity' to litigate their claims and the prior state proceeding otherwise satisfied 'the applicable requirements of due process.'

*Shields v. Bellsouth Advertising and Publishing Co.*, No. 99-8307, slip op. at p. 3 (11th Cir. Sept. 29, 2003).

Baker reasons: "[i]f the appellate court will give credence to an existing state court decision involving the same litigants and the same issue, surely the District Court should be inclined to stand behind its own prior decision, especially when the rationale behind that opinion is both cogent and compelling."

Baker further contends that not only is FEMA collaterally estopped from relitigating this issue, but also the law of the case doctrine binds this court in this regard:

> The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177 (1988) (citation omitted). This doctrine is designed to further important goals vital to just and efficient judicial process, including the provision of an end to litigation, the discouragement of "panel shopping," and the promotion of consistency between courts. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 169 (11th Cir. 1994).

*Klay v. All Defendants*, No. 03-14828, slip op. at 3 (11th Cir. Nov. 5, 2004); *see also In re PCH Assoc.*, 949 F.2d 585 (2d Cir. 1991) (stating that "[u]nder the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in subsequent stages of the same litigation"). Baker also quotes:

> The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. This is the so-called "mandate rule." The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issues by a higher court. It holds "that when a court has ruled on an issue, that decisions should generally be adhered to by that court in subsequent states in the same case," unless "cogent" and "compelling" reasons militate otherwise.

*United States v. Quintieri*, No. 01-1013, slip op. at 4 (2d Cir. Oct. 9, 2002) (internal citations

omitted).

"A federal court enunciating a rule of law to be applied in a particular case establishes the 'law of the case,' which 'other courts owing obedience to it must, and which itself will, normally apply to the same issues in subsequent proceedings in that case.'" *William G. Roe & Co. v. Armour & Co.*, 414 F.2d 862, 867 (5th Cir. 1969). Though Baker "acknowledges the Court's comments during the recent hearing and also concedes that the doctrine of the law of the case is not unilaterally binding," he "urges the Court to recognize the value of applying the prior ruling in this case and to follow the abundant case law sanctioning that course of action."

**2. Statutory Construction**

Baker concedes that the United States cannot be sued except as it consents to be sued, but argues that there is "no logical way" to interpret the language of 42 U.S.C. § 4081 (c) that does not constitute a waiver of sovereign immunity. According to Baker, that statute provides in pertinent part:

> The Director of the Federal Emergency Management Agency shall hold any agent or broker selling or undertaking to sell flood insurance...harmless from any judgment for damages against such agent or broker as a result of any court action by a policyholder or applicant arising out of an error or omission on the part of the Federal Emergency Management Agency, *and shall provide any such agent with indemnification...arising out of and caused by an error or omission on the part of the Federal Emergency Management Agency and its contractors*.

42 U.S.C. §4081 (c) (West 2005) (emphasis added).

Though Baker claims he could find no case factually on point, he claims to have located analogous cases. In *Library of Congress v. Shaw*, 478 U.S. 310 (1986), the Supreme Court held that, though the language of Title VII of the Civil Rights Act of 1964, making the United States liable "the same as a private person," allowed an award of reasonable attorney's fees to an

injured party in addition to recovery for costs, legislative silence as to interest precluded reading such a provision into the statute. *Id*. at 321. Baker claims that the Supreme Court noted in its opinion that the allowable recovery for costs and for a reasonable attorney's fees were narrow, limited waivers of sovereign immunity. He argues that the language of 42 U.S.C. § 4081 (c) should be similarly construed to allow for indemnification.

Baker claims that "it is clear that the statutory language provides that an injured agent or broker may institute an indemnification suit when he has been injured or caused to expend monies defending an action related to an error or omission on the part of FEMA." According to Baker, the language makes no reference to a necessary process or procedure. Baker argues that there are "no broad implications, no dangerous, slippery slope, and no other unintended outcome that might result from such a reading, other than the one obviously intended by Congress."

While Baker acknowledges that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it," *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979), he claims that a private right of action exists by implication. *See Moreno v. Consolidated Rail Corp.*, 99 F.3d 782 (6th Cir. 1996). Baker asserts that the "[f]actors relevant to determining the intent of Congress when a statute 'does not expressly provide for a particular private right of action' are 'the language of the statute itself, its legislative history, the underlying purpose and structure or statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies.'" *Feins v. American Stock Exchange*, 81 F.3d 1215, 1220 (2d Cir. 1996) (*quoting Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 91 (1981)). Baker argues that there "can be no question" that the statute at issue intended to allow for indemnification and to waive

sovereign immunity.

According to Baker, in *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court reviewed a federal criminal statute providing for a fine or imprisonment upon violation to determine whether a civil penalty was also available. The Court stated:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," --that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78 (U.S.1975) (internal citations omitted).

Baker claims that he is an agent or broker as specified in the statute. He asserts that section 4081 (c) provides a right of indemnification for the agent or broker injured by an error or omission attributable to FEMA in relation to its role as overseer of the NFIP. He argues that Congress clearly intended to create such a remedy, hence the inclusion of the duty of indemnification in the statutory scheme. He further argues that all claims or causes of action arising under the NFIP are under the exclusive jurisdiction of the federal judiciary. *State Bank of Coloma v. Nat'l Flood Insurance Program*, 851 F.2d 817, 820 (6th Cir. 1988). According to Baker, Congress enacted section 4081 (c) intending to waive FEMA's immunity from suit. In conclusion, Baker asks the question first posed by Judge Acker in his Memorandum Opinion and raised by this court during a recent phone conference: "What remedy does Baker have if not a direct action seeking indemnification?"

**II. Defendant Paulison's Response**

**1. Plaintiff failed to identify a valid waiver of sovereign immunity.**

According to Paulison, Baker concedes that the United States cannot be sued except as it consents to be sued. Paulison claims that Baker concedes that waivers of sovereign immunity must be construed strictly in favor of the sovereign. Paulison further claims that, though Baker relies on general principles of statutory construction to support his position that this court should find a waiver of sovereign immunity, the cases upon which Baker relies support no such position.

According to Paulison, in *Library of Congress v. Shaw*, 478 U.S. 310 (1986) the issue before the Supreme Court was whether the narrow waiver of sovereign immunity found in the Civil Rights Act of 1964 - an "unequivocal" expression allowing attorney fees - could be interpreted to allow for interest on such an award. Paulison claims that Congress was silent on the issue of judicial review when it promulgated section 4081 (c). Paulison argues that this court cannot read into the statute a waiver of sovereign immunity "not otherwise found." Paulison claims that waivers of sovereign immunity must be unequivocally expressed. *See United States v. Idaho*, 508 U.S. 1, 6-7 (1993); *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *McMaster v. United States*, 117 F.3d 936 (11th Cir. 1999).

Paulison asserts that Baker's reliance on *CSX Transp., Inc. v. Brotherhood of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003) for his assertion that issue preclusion applies to Paulison's argument on waiver of sovereign immunity is misplaced. According to Paulison, the *CSX* court recognized that one of the fundamental prerequisites to the application of collateral estoppel was that "the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action." *Id.* Paulison argues that in the prior

case, the determination that sovereign immunity was waived was not a "critical and necessary part" of the judgment because the case was dismissed on ripeness grounds. Therefore, Paulison further argues, Judge Acker's prior ruling on that issue is dictum and Paulison's position is not barred by the doctrine of collateral estoppel.

According to Paulison, Baker's reliance on *Shields v. Bellsouth Advertising and Publishing Co.*, No. 99-8307, slip op. at 3 (11th Cir. Sept. 29, 2000), for its holding that the Eleventh Circuit will give preclusive effect to a state court judgment, is misplaced because *Shields* does not apply in the present case. Paulison claims that a prior decision of a state court is not at issue. He further claims that FEMA was not a participant in Baker's state court action, and did not have a "full and fair" opportunity to litigate in state court. Paulison argues that Baker has failed to show how the state court action "otherwise meets the preconditions necessary for the Eleventh Circuit to give it preclusive effect."

Paulison claims that *United States v. Quintieri*, No. 01-1013, slip op. at 4 (2d Cir. Oct. 9, 2004) splits its analysis of the law of the case doctrine into two branches. Paulison asserts that the first branch requires a trial court to follow an appellate court's prior ruling, which is presently inapplicable, as no appellate court has ruled in this case. Paulison further asserts that the second branch pertains to those instances where a trial court reconsiders its own ruling in the absence of an intervening appellate ruling. According to Paulison, the *Quintieri* court held that in such a situation, that decision should "generally" be adhered to by that court in a subsequent stage of the same case unless "cogent and compelling" reasons militate otherwise. Paulison argues that FEMA has set forth cogent and compelling reasons why this court is not bound - because the prior ruling was fashioned on grounds of ripeness, and "to the extent that it could be interpreted

to decide that 42 U.S.C. § 4081 (c) waives sovereign immunity, *Vice* was wrongly decided."

According to Paulison, many of the remaining cases cited by Baker are "inapposite" as they do not involve the government, and waiver of immunity is therefore not an issue. *See Van Holt v. Liberty Mutual Ins. Co.*, 163 F.3d 161 (3d Cir. 1998); *Feins v. American Stock Exchange*, 81 F.3d 1215 (2d Cir. 1996); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 44 U.S. 11, 19 (1979). Moreover, Paulison asserts, Baker "appears to confuse a 'private right of action' with a waiver of sovereign immunity." Paulison argues that Baker failed to identify a valid waiver of sovereign immunity, and Judge Putnam's Report and Recommendation should be adopted, and this case dismissed.

**2. Plaintiff failed to demonstrate that he had no alternative forum that could provide a remedy.**

Paulison claims that this court is without jurisdiction because Baker has failed to exhaust his administrative remedies - there has been no final agency decision to place before the court and FEMA has not developed an administrative record for review. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Media General Operations, Inc. v. Secretary of Labor*, 152 F. Supp. 2d 1368 (S.D. Ga. 2001). According to Paulison, Baker rejected FEMA's explanation of the remedy provided for his claim under 42 U.S.C. § 4081 (c) because the language of the statute "makes no reference to any process or procedure, which must be satisfied prior to seeking such indemnification."

Paulison asserts that Baker relies on *Cort v. Ash*, 422 U.S. 66 (1975) to demonstrate his remedy. According to Paulison, in *Cort*, the Supreme Court dealt with the issue of whether a private civil remedy is implicit in a criminal statute not expressly providing one. Paulison argues

that Baker failed to demonstrate how the conditions for determining whether such a remedy is implicit set forth in *Cort* provide support for his position that this court has jurisdiction over the this case. Paulison claims that Baker has a remedy under the APA, "provided that he exhausts his administrative remedies."

**CONCLUSIONS OF THE COURT**

There is one matter patently clear to this court - Baker is not entitled to prevail based upon a collateral estoppel or a law of the case doctrine. Judge Acker's "Judgment" was a dismissal based upon lack of ripeness. There was no adverse final judgment or conclusion otherwise which the defendant could have appealed.

The sovereign immunity issue is not so clear. The defendant argued that this court's December 9, 2005, Order is "based on a faulty premise that, in order to be unequivocally expressed, the case law does not [sic] require that the terms 'immunity' or that it is 'waived' to appear in the statute." This rather confusing assertion is apparently intended to state that such words do not have to be used in order for sovereign immunity to preclude an action.

The key seems to be not whether "immunity" or "waiver" are discussed, but whether the language of the statute unambiguously creates a cause of action and allows for the recovery of damages. Of course, it would be better if Congress would simply say whether sovereign immunity is or is not waived. Apparently, that would be too simple. Here, however, there is little ambiguous about the statute.

The statute clearly says that FEMA "<u>shall</u> hold any agent or broker...<u>harmless</u> from any judgment for <u>damages</u>...and shall provide and such agent with <u>indemnification</u>...." (Emphasis added). The real issue would appear to be whether § 4081(c) itself waives sovereign immunity or

whether the plaintiff must proceed under the Administrative Procedure Act. While it is reasonably arguable that the substantive statute itself waives sovereign immunity, this court cannot hold that it does so unequivocally or expressly. There appears, however, to be a clear remedy under the Administrative Procedure Act.

In *Bowen v. Mass.*, 487 U.S. 879, 893-94 (1988), the Court stated:

> The fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as "money damages." Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages."

See further discussion at 487 U.S. 894-912.

*Bowen* has been further discussed in *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999). On first blush, *Blue Fox* might suggest that § 702 is not available to the plaintiff here. However, the following statements seem to suggest to the contrary:

> Quoting *Bowen*, "'We begin with the ordinary meaning of the words Congress employed. The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled."'" 487 U.S., at 895 (quoting *Maryland Dept. of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441, 1446 (CADC 1985) (citation omitted).

*Blue Fox*, 525 U.S. at 262 (emphasis added).

> We held that the State's suit was not one "seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." The Court therefore concluded that the substance of the State's suit was one for specific relief, not money damages, and hence the suit fell within § 702's waiver of immunity.

*Id.* at 262.

> But the Miller Act by its terms only gives subcontractors the right to sue on the surety bond posted by the prime contractor, not the right to recover their losses directly from the Government.

*Id.* at 264.

In *Darby v. Cisneros*, 509 U.S. 137 (1993), the Supreme Court addressed the issue of whether a claimant must exhaust his or her administrative remedies before searching for relief under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, "where neither the statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review." *Darby*, 509 U.S. at 138. The Court held:

> Although § 10(a) [5 U.S.C. § 702] provides the general right to judicial review of agency actions under the APA, § 10(c) [5 U.S.C. § 704] establishes when such review is available. When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is "final for the purposes of this section" and therefore "subject to judicial review" under the first sentence. While federal courts may be free to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review, § 10(c), by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates.
>
> The last sentence of § 10(c) refers explicitly to "any form of reconsideration" and "an appeal to superior agency authority." Congress clearly was concerned with making the exhaustion requirement unambiguous so that aggrieved parties would know precisely what administrative steps were required before judicial review would be available. If courts were able to impose additional exhaustion requirements beyond those provided by Congress or the agency, the last sentence of § 10(c) would make no sense. To adopt respondents' reading would transform § 10(c) from a provision designed to " 'remove obstacles to judicial review of agency action,' " *Bowen v. Massachusetts*, 487 U.S., at 904, 108 S.Ct., at 2737, *quoting Shaughnessy v. Pedreiro*, 349 U.S. 48, 51, 75 S.Ct. 591, 593, 99 L.Ed. 868 (1955), into a trap for unwary litigants. Section 10(c) explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § 10(c) for courts to require litigants to exhaust optional appeals as well.

*Darby v. Cisneros*, 509 U.S. 137, 146-147 (1993).

The language of § 10(c) of the APA is explicit that an appeal to "superior agency authority" is a prerequisite to judicial review only when "expressly required by statute" or when the agency requires an appeal "by rule and provides that the [administrative] action is...inoperative" pending that review. In other words, exhaustion of administrative remedies of that type is required, in this instance, only if 42 U.S.C. § 4081, the NFIP, or FEMA itself, require it. There is no such

requirement.

An indemnification would appear to involve "the failure of the Federal Government to pay as mandated"...in "a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." This action is an "attempt to give the plaintiff the very thing to which he [is] entitled." The statute gives the plaintiff "the right to recover...directly from the Government." That's what indemnity means. The court concludes that there is an available remedy under the APA.

Of course, any claim against the Government requires proof that an amount is due. That does not mean, however, that all such claims are for "money damages." The claim here is to enforce an entitlement to what the plaintiff is "entitled" if he proves what he has paid arose out of or was caused by an error or omission of the defendant.

While *Darby* suggests that an "exhaustion of remedies" is not required, it also repeatedly refers to a review of a "final agency action." *Darby* concludes that, "Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become '*final*' under § 10(c)." *Darby*, 509 U.S. at 153 (emphasis added).

Here, the plaintiff acknowledges that, other than by filing actions in court, he has never made a claim directly to the agency so that it could make a "final" decision. This court concludes that it cannot review a final decision if there has been none.

The court will dismiss this action without prejudice. It would appear that the plaintiff has three choices:

(1) File a claim with FEMA under the APA and seek review when there is a final decision; or

(2) Appeal the dismissal and argue that § 4081(c) waives immunity and/or that the APA allows an immediate action; or

(3) Both (1) and (2).

With regard to the APA statute of limitations, see *Alabama v. Shalala*, 124 F. Supp. 2d 1250 (M.D. Ala. 2000).

This 30th day of January, 2006.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**